USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/15/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
GLOBAL REINSURANCE CORPORATION OF                              :
AMERICA,                                                       :
                                             Plaintiff,        :   13 Civ. 06577 (LGS)
                                                               :
                  -against-                                    :   OPINION AND ORDER
                                                               :
CENTURY INDEMNITY COMPANY,                                     :
                                             Defendant.        :
                                                               :
-------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Global Reinsurance Corporation of America brings this action against Defendant Century Indemnity Company seeking a declaration of its rights and obligations under nine certificates of reinsurance ("Certificates") issued by its predecessor-in-interest, Constitution Reinsurance Corporation, to Defendant's predecessor-in-interest, the Insurance Company of North America.[1]  Before the Court is Plaintiff's motion for partial summary judgment seeking a declaration that the dollar amount stated in the "Reinsurance Accepted" section of each of the nine Certificates caps the maximum amount that Global can be obligated to pay for combined loss and expenses.  For the reasons discussed below, Plaintiff's motion is granted.

### I.      Facts

The facts are taken from the parties' summary judgment submissions and, as required, viewed in the light most favorable to the nonmoving party.

---

[1] "Reinsurance is a mechanism by which one insurer insures the risk of another insurer." *Travelers Cas. and Sur. Co. v. Insurance Co. of North America*, 609 F.3d 143, 148-49 (3d Cir. 2010) (internal quotation marks omitted).  "The insurer pays the reinsurer a premium in exchange for which the reinsurer assumes a portion of the [insurer's] potential financial exposure under certain direct insurance policies it has issued to its insured." *Id.* at 149 (internal quotation marks omitted) (alteration in original).

### A. Background

Plaintiff Global is an insurance company organized under the laws of New York, with its principal place of business in New York, New York.  Defendant Century is an insurance company organized under the laws of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

From 1962 to 1981, Century issued various primary and excess liability policies to Caterpillar Tractor Company, some of which were reinsured by Global ("Policies").  Since 1988, thousands of lawsuits have been brought against Caterpillar by various plaintiffs alleging bodily injury resulting from exposure to asbestos ("Claims").  In January 2001, Caterpillar requested coverage and the defense of these Claims from Century.

In 2004, Caterpillar and Century commenced declaratory judgment actions against each other to resolve coverage issues concerning the Policies.  As a result, Century became obligated to reimburse Caterpillar for defense expenses in addition to the indemnity limits of the Policies.  Subsequently, Century has paid more than $60 million to Caterpillar, most of which was for expenses as opposed to loss.  In 2013, Century settled the remainder of its past indemnity and expense costs owed to Caterpillar.  Century continues to incur indemnity and expense costs for new asbestos-related suits brought against Caterpillar.

### B. The Certificates

Each Certificate provides that Global reinsures Century "subject to" either the "amount of liability" or "limits of liability" set forth in the Certificate.  The "Reinsurance Accepted" section of each of the Certificates provides a specific dollar amount ranging from $250,000 to $2,000,000 ("Certificate Limits").  Global maintains that the Certificate Limits are the maximum amounts it

must pay under each Certificate, while Century maintains that the Certificate Limits apply only to loss; therefore, Global must pay expenses above and beyond that amount.

Certificate E89-91, also named Certificate 60589 ("Certificate X"), contains a Certificate Limit of $250,000.  Century has already billed Global in excess of $250,000 under Certificate X.  Century has not yet billed Global under any of the other Certificates.  Global expects further billings from Century under Certificate X as well as billings under other of the Certificates in excess of their respective Certificate Limits.

The first page of Certificate X states that the reinsurance is "in consideration of the payment of premium and subject to the terms, conditions and amount of liability set forth herein . . ." (the "Subject To Clause").  All of the Certificates contain this language or substantially similar language, stating that the reinsurance is "in consideration of the payment of premium and subject to the terms, conditions and limits of liability set forth herein    . . ."

The first page of Certificate X also lists 5 "Items":  Item 1 is "Type of Insurance" and is described as "Blanket General Liability, excluding Automobile Liability as original"; Item 2 is "Policy Limits and Application" and is described as "$1,000,000. each occurrence as original"[2]; Item 3 is "[Century] Retention" and is described as "The first $500,000. of liability as shown in Item #2 above"; Item 4 is "Reinsurance Accepted" and is described as "$250,000. part of $500,000. Each occurrence as original excess of [Century's] retention as shown in Item #3 above"; and Item 5 is "Basis" and is described as "Excess of Loss."  Each of the Certificates contains Item 4, "Reinsurance Accepted," with a listed dollar amount.

The second page of Certificate X provides that "the liability of the Reinsurer specified in Item 4 above shall follow that of [Century] and, except as specifically provided herein, shall be

---

[2] Century claims that the $1 million is a misstatement and that the policy limit is in fact $500,000. This discrepancy does not affect the issue before the Court in this motion.

3

subject in all respects to all the terms and conditions of [Century's] Policy" (the "Follow the Fortunes Clause"). This page also provides:

> All claims involving this reinsurance, when settled by [Century], shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to [Century's] gross loss payment, its proportion of expenses, other than [Century] salaries and office expenses, incurred by [Century] in the investigation and settlement of claims or suits . . .

(the "In Addition Thereto Clause"). All of the certificates have language similar to the Follow the Fortunes Clause and the In Addition Thereto Clause.

Certificate X was placed through a reinsurance intermediary, Towers, Perrin, Forster & Crosby, Inc. ("TPF&C"), located in Philadelphia, Pennsylvania. The negotiations concerning Certificate X also took place through TPF&C. These negotiations, as well as agreement upon the key terms, took place at an in-person meeting at Plaintiff's offices in New York, New York. All of the Certificates were prepared in, countersigned in and issued from offices located in New York, New York. All payments which may be due in performance of the Certificates will be issued from offices located in New York, New York.

## II.     Standard of Review

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must construe the evidence in the

light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim.  *See Celotex,* 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact.  *See id.* at 322.  In satisfying this burden, the non-moving party cannot rely merely on allegations or denials of the factual assertions of the moving party.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 324.  Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  The non-moving party must present specific evidence in support of its contention that there is a genuine dispute as to the material facts.  *See Celotex,* 477 U.S. at 324.  Furthermore, to demonstrate a genuine dispute as to the material facts, the non-moving party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor.  *See Anderson*, 477 U.S. at 242, 248.

### III. Discussion

#### A. Choice of Law

The parties dispute whether New York or Pennsylvania law applies to this case, and no contractual choice-of-law provision exists.  Under a choice-of-law analysis, New York law applies in this case because New York has the most significant relationship with the dispute.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state, in this instance New York." *Tri-State Employment Services, Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 260 (2d Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).  "Courts in New York . . . apply a 'center of gravity' or 'grouping of the contacts' approach to choice-of-law issues in contract cases."  *Id.* at 260-61; *accord In re Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 226 (1993).  "Under this approach, courts may consider a variety of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties."  *Tri-State Employment Services*, 295 F.3d at 261.

In applying New York choice-of-law rules in the context of reinsurance disputes, courts have repeatedly selected the law of the state where the reinsurer is located, as that is usually where the certificates were issued and where claims would be made or performance would occur.  *See*, *e.g.*, *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Calvert Fire Ins. Co.*, 887 F.2d 437, 439 (2d Cir. 1989) (applying the law of the state where "[the reinsurer] was organized . . . , the reinsurance certificate was issued . . . and any obligation to perform on the reinsurance contract would seem to arise"); *TIG Premier Ins. Co. v. Hartford Acc. & Indem. Co.*, 35 F. Supp. 2d 348, 350, 350 n.3 (S.D.N.Y. 1999) (applying the law of the state where "the Reinsurance Certificate

was issued and . . . claims on that certificate would be expected to be made" and declining to apply the law of the state where the direct insurer was located).

Here, Global, the reinsurer, is located in New York; therefore, claims are expected to be made and performance is expected to occur in New York. Additionally, Global presents evidence that all of the Certificates were issued in New York. Century maintains that some of the Certificates were negotiated and placed through a reinsurance intermediary, TPF&C, located in Pennsylvania; however, Century provides no evidence that TPF&C was involved with any of the Certificates other than Certificate X. For the majority of the Certificates, the only connection to Pennsylvania apparent from the evidence is that Pennsylvania is Century's state of incorporation and principal place of business. Moreover, even for Certificate X, the evidence shows that it was negotiated and agreed upon in New York, not Pennsylvania.

Century requests discovery on the choice of law issue. This discovery is unnecessary. The record shows that the reinsurer is located in New York and that the Certificates were issued in New York. Even if "the precise place of contracting is somewhat unclear . . . New York certainly had a more significant relationship to the Certificate[s'] formation than Pennsylvania did." *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America*, 693 F.3d 417, 437 (3d Cir. 2012). While Pennsylvania has some interest in the dispute at issue, "New York has the most significant relationship to the Certificate[s] and the greater interest in having its law applied." *Id.* at 439 ("New York has an interest in protecting the rights of . . . New York reinsurers . . . who operate out of New York offices, to enter into contracts and to have their terms enforced predictably"). Accordingly, New York law applies.[3]

---

[3] It is probable that if Pennsylvania law were to be applied, the result of this motion would be the same. *See Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America*, No. 09–6055, 2010 WL 1659760, at *5 (E.D.Pa. April 23, 2010) (following the same Second Circuit precedent discussed and applied below); *see also Pacific Employers Ins. Co. v. Global Reinsurance Corp.*

### B. Merits

Global moves for partial summary judgment seeking a declaration that the Certificate Limits stated in the "Reinsurance Accepted" section of each of the Certificates caps the maximum amount that Global can be obligated to pay for combined loss and expenses. Based on the plain language of the Certificates and the Second Circuit's binding precedent, Global's motion is granted. *See Bellefonte Reinsurance Co. v. Aetna Cas. and Sur. Co.*, 903 F.2d 910, 913 (2d Cir. 1990); *see also Unigard Security Ins. Co. v. North River Ins. Co.*, 4 F.3d 1049, 1070-71 (2d Cir. 1993).

In *Bellefonte*, the Second Circuit affirmed the judgment of the district court, which held that the reinsurers were not obligated to pay the direct insurer any additional sums for defense costs over and above the limits on liability stated in the reinsurance certificates at issue. *Bellefonte*, 903 F.2d at 910-11. The *Bellefonte* court held that the reinsurers' total liability, for both loss and expenses, under the reinsurance certificates at issue, was capped at the dollar amount stated in the "Reinsurance Accepted" section of each certificate. *Id.* at 913. The *Unigard* court held the same and followed the reasoning of *Bellefonte*. *Unigard*, 4 F.3d at 1070-71.

The *Bellefonte* court based its decision on the plain language of the reinsurance certificates at issue, focusing on two provisions. *Bellefonte*, 903 F.2d at 911. The first provision stated that the reinsurance was "in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein . . . ." *Id.* The second provision was the "Reinsurance Accepted" section, which stated the dollar amount of liability. *Id.* The Second Circuit reasoned that this dollar amount "capped the reinsurers' liability under the certificates" and that "[a]ll other contractual language must be construed in light of that cap." *Id.* at 914. The

---

*of America*, No. 09–6055, 2010 WL 2376131, at *6-7 (E.D.Pa. June 9, 2010) (denying motion for reconsideration and declining to consider extrinsic evidence of alleged industry custom).

Second Circuit further reasoned that construing the reinsurance certificates any other way "would negate the phrase '. . . subject to the . . . amount of liability set forth herein.'" *Id.*

Here, the relevant language in Global's Certificates is nearly identical to the language relied on by the Second Circuit in *Bellefonte*. The Certificates at issue in this case contain the Subject To Clause (stating that the reinsurance is "in consideration of the payment of premium and subject to the terms, conditions and amount [or limits] of liability set forth herein") and state a dollar amount of liability in the "Reinsurance Accepted" section. Consequently, just as in *Bellefonte*, here, Global's total liability for both loss and expenses is capped at the dollar amount stated in the "Reinsurance Accepted" section of each Certificate.

Century argues that the result in the instant case should differ from that in *Bellefonte* because, here, the underlying Policies pay expenses above and beyond the limits for loss, where the underlying policies in *Bellefonte* did not. This argument fails, as the Second Circuit has followed the reasoning of *Bellefonte* when dealing with underlying policies that pay expenses above and beyond the limits for loss. *See Unigard*, 4 F.3d at 1070-71.

Century also argues that the result in the instant case should differ from that in *Bellefonte* because, here, the language of the Certificates is different from that in *Bellefonte* and the Certificates here contain language that may not have been included in the certificates in *Bellefonte*. This argument also fails because the Second Circuit, as well as other federal and New York courts, have followed the reasoning of *Bellefonte* when analyzing somewhat different contractual language and circumstances. *See*, *e.g.*, *id.*; *Allendale Mut. Ins. Co. v. Excess Ins. Co. .,  Ltd.*, 992 F. Supp. 271, 277 (S.D.N.Y. 1997); *Pacific Employers*, 2010 WL 1659760, at *5; *Excess Ins. Co. Ltd. v. Factory Mut. Ins. Co.*, 3 N.Y.3d 577, 584-85 (2014).

Moreover, as discussed, the relevant language in the Certificates at issue is nearly identical to the language relied on by the Second Circuit in *Bellefonte*. The *Bellefonte* and *Unigard* courts made it clear that "'*[a]ll other contractual language* must be construed in light of'" the Certificate Limit. *Unigard*, 4 F.3d at 1071 (quoting *Bellefonte*, 903 F.2d at 914) (emphasis added).

Standing on its own, the unambiguous language in the "Reinsurance Accepted" sections of the Certificates does not differentiate between reinsurance accepted for loss versus reinsurance accepted for expenses, but simply provides a total cap on liability. If the parties intended to exclude expenses from the total liability cap, they could have made that clear in the language of the Certificates. The New York Court of Appeals held that in order for costs to be excluded from the liability cap in a reinsurance certificate, language in the certificate must "expressly stat[e] that [such] costs were excluded from the indemnification limit." *Excess Ins.*, 3 N.Y.3d at 584-85. Nothing in the Certificates at issue expressly states that expenses are to be excluded from the Certificate Limits.

Century argues that the Follow the Fortunes Clause (stating that "the liability of the Reinsurer . . . shall follow that of [Century]") means that Global is obligated to pay for expenses above the Certificate Limit in the same manner that Century is obligated to pay for expenses above the limits of the underlying Policies. Century further argues that this is consistent with the "follow the fortunes" doctrine common in the insurance industry, which burdens the reinsurer with the same risks undertaken by the direct insurer. These arguments fail.

The *Bellefonte* court was unpersuaded by the argument that the "follow the fortunes" doctrine was common in the insurance industry and therefore created liability for the reinsurer above and beyond the liability cap stated in each Certificate. *Bellefonte*, 903 F.2d at 912-13.

Moreover, the certificates in *Bellefonte* contained a substantially identical provision to the Follow the Fortunes Clause here, stating that "the liability of the Reinsurer specified . . . shall follow that of the Company." *Id.* at 911. The Second Circuit held that these provisions were "structured so that they coexist with, rather than supplant, the liability cap." *Id.* at 913. The Second Circuit reasoned that "allowing the 'follow the fortunes' clause to override the limitation on liability . . . would strip the limitation clause . . . of all meaning" and "would be contrary to the parties' express agreement and to the settled law of contract interpretation." *Id.*

Century also argues that the In Addition Thereto Clause (stating that Global "shall be bound to pay its proportion of . . . settlements, and in addition thereto, in the ratio that [Global's] loss payment bears to [Century's] gross loss payment, its proportion of expenses") demonstrates that Global's liability for expenses is above and beyond the Certificate Limit, which is Global's liability for loss. This argument also fails.

The certificates in *Bellefonte* had a substantially identical provision to the In Addition Thereto Clause here, stating that "the Reinsurer . . . shall be bound to pay its proportion of . . . settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses." *Id.* at 911. The Second Circuit held that "the phrase 'in addition thereto' merely . . . differentiate[s] the obligations for losses and for expenses" and "in no way exempts defense costs from the overall monetary limitation in the certificate." *Id.* at 913. The Second Circuit reasoned that "the 'subject to' clause . . . makes the 'in addition thereto' language 'subject to' the cap on liability." *Id.* at 914.

The *Bellefonte* court held that neither the "follow the fortunes" doctrine nor the "in addition thereto" language in the reinsurance certificates exempted defense costs from the clauses limiting the reinsurers' overall liability under the certificates, as all costs were "subject to" the

11

express caps on liability set forth in the certificates. *Id.* Likewise, here, neither the Follow the Fortunes Clause nor the In Addition Thereto Clause exempts expenses from the Certificate Limits due to the Subject To Clause.

These, as well as all of Century's other arguments, have been made before and rejected by the Second Circuit and the New York Court of Appeals. The Second Circuit in *Unigard* stated:

> *Bellefonte*'s gloss upon the written agreement is conclusive. The efficiency of the reinsurance industry would not be enhanced by giving different meanings to identical standard contract provisions depending upon idiosyncratic factors in particular lawsuits. The meaning of such provisions is not an issue of fact to be litigated anew each time a dispute goes to court.

*Unigard*, 4 F.3d at 1071. The dollar amount indicated in each of the Certificate Limits is the maximum amount that Global can be obligated to pay for loss and expenses, combined. Accordingly, Global's Motion for summary judgment is granted.

### IV. Conclusion

For the reasons discussed above, Plaintiff's motion is GRANTED.

In light of the parties' joint letter submitted to the Court on August 16, 2014, which states that "Global has advised that it will be formally dropping all defenses to payment of Century's claims other than its 'cap' defense based on the *Bellefonte* line of cases," the parties are directed to submit another joint letter by August 22, 2014, explaining how they intend to proceed with this case and/or stipulating dismissal.

The Clerk of Court is directed to close the motion at docket number 30.

Dated: August 15, 2014
      New York, New York

                                   LORNA G. SCHOFIELD
                                  UNITED STATES DISTRICT JUDGE